ROBERTO SANTOS GONZÁLEZ, Petitioner and Appellee, *v.* BEATRIZ BERDECÍA ET AL., Respondents and Appellants.

No. 10637. Argued August 26, 1952.—Decided September 17, 1952.

*Aníbal Padilla* for appellants. *Luis A. Noriega* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Roberto Santos González filed a petition for a writ of habeas corpus in the former District Court of Ponce (today Superior Court) against Beatriz Berdecía and Justo Berdecía. He alleged substantially therein that he has a daugther called Carmen Magdalia Santos, who is an acknowledged child of the petitioner and the respondent Beatriz Berdecía; that the aforesaid minor is at present under the physical custody of the other respondent Justo Berdecía, her maternal grandfather; that the petitioner is married to Filomena Ramírez, lives in number 70 Santiago Iglesias Street in the town of Coamo, has no children by his present wife, and is now rendering services in the armed forces of North America, stationed at the Rodríguez Army Hospital, in Fort Brooke, San Juan, Puerto Rico. He alleges, furthermore, that the fact that the aforesaid minor is under the custody of the respondents is harmful, prejudicial and contrary to her welfare and happiness, because (*a*) the child is compelled to live with the respondent surrounded by limitations injurious to her health and physical development; (*b*) the respondents have displayed a crass unconcern and neglect in connection with the personal cleanliness of and other care due to said minor; (*c*) the respondents lack the means to defray the minor's essential expenses and to take care of her properly, whereas the petitioner has the means and resources to look after and have the custody of his daughter, bringing her to live in his home since such is the wish of his present wife who is willing to look after and take care of her as if she were her own child; (*d*) the respondent Beatriz Berdecía married some time ago and lives

in the town of Coamo, totally devoid of properties or financial means to pay for the minor's education, for which reason she confided her to her father who has the child under his custody and care; (e) the petitioner has at present an established home and the environment there is propitious and adequate as regards the bringing up and development of the minor, for although he is in the Army, he goes every week to Coamo to see his wife and to try to see his daughter also; (f) the respondent Justo Berdecía, the minor's grandfather, is a man over 60 years old, he has a wife and no financial means whatsoever, and is unable, because of his physical condition, to take good care of the minor, as the petitioner would; (g) the respondents have refused and still refuse to deliver the custody of the minor to the petitioner, depriving her of her liberty and of her father's love, protection and care.

The writ was issued and the respondents answered accepting that the minor Carmen Magdalia Santos is an acknowledged natural child of the petitioner Roberto Santos González and the respondent Beatriz Berdecía, as well as petitioner's present civil status, occupation and place of residence. They denied that the minor is under the physical custody of the respondent Justo Berdecía and alleged, to the contrary, that the minor and her mother lived with said Justo Berdecía until the end of 1949 because the petitioner would not support said minor, but that ever since then the minor has been living under the love, care and attention of her mother the respondent Beatriz Berdecía. They also denied that the fact that the minor is under the custody of the respondents is harmful, prejudicial and contrary to her welfare and happiness, alleging to the contrary that the respondents as well as the present husband of the respondent Beatriz Berdecía are poor and live modestly, but that they do not complain, inasmuch as despite their poverty they, as well as the minor, have all they need to satisfy their necessi-

ties and to lead a decent and honest life. As special defense they alleged that the petitioner brought this action because he was required by the minor's mother to support said child, which duty he fulfilled for some time and which he has failed to fulfill for the last five months notwithstanding an order of the court imposing that obligation on him.

After a trial on the merits, the former District Court of Ponce entered judgment granting the petition for a writ of habeas corpus and ordered the defendants Beatriz Berdecía and Justo Berdecía to deliver the minor Carmen Magdalia Santos to the plaintiff Roberto Santos González, without excuse or pretext of any kind and under pain of contempt if they failed to do what the judgment ordered.

The defendants appealed to this Court and make the following assignments of error:

"FIRST ERROR: The lower court erred because during the entire proceeding, at the trial, it was moved by passion, prejudice and partiality against the respondents.

"SECOND ERROR: The lower court erred in basing its judgment on findings contrary to the evidence submitted by both parties at the hearing.

"THIRD ERROR: The court erred in giving to the concept 'patria potestas', pursuant to § 152 of the Civil Code, 1930 ed., an outmoded and archaic scope, repugnant to Christianity.

"FOURTH ERROR: The lower court erred in exercising the power of 'parens patriae', forgetting that the controlling consideration is the welfare of the child.

"FIFTH ERROR: The lower court erred in deciding the case contrary to the law and the decisions."

The appellee filed no brief.

We shall discuss the second, third, fourth and and fifth errors jointly because all are directed to the evidence, which, therefore, we must summarize.

Let us examine plaintiff's evidence. It consisted of his own testimony and of that of his wife Filomena Ramírez de Santos.

*Roberto Santos González*, the petitioner, testified that he is married and lives in number 70 Santiago Iglesias Street, in the town of Coamo; that he has a daughter eight or nine years old called Carmen Magdalia Santos, born as a result of sexual relations between him and the defendant Beatriz Berdecía, whom he never married, which child he acknowledged immediately after she was born; that he is at present rendering services in the United States Armed Forces, stationed at San Juan, but that he goes to his home in Coamo every week and spends there two or three days; that he loves his daughter Carmen Magdalia dearly because she is his first and only child and that his present wife agrees that the custody of said child be awarded to him; that the house in which he lives is a concrete house, has a tile bath and toilet and you need not walk on the ground because the yard extends for over one hundred meters; that in that house he has refrigeration facilities, an ice box, and a room reserved for his daughter and that, in addition, he has a maid; that his daughter will not have to work in his house because, being interested in her education, he intends to send her to a Catholic school; that Beatriz Berdecía remarried but that he does not know whether she lives with her husband or with Justo Berdecía, his daughter's maternal grandfather, inasmuch as he has gone to the said Justo's house sometimes and has not found his daughter there; that his daughter lives in both houses, she is either at Justo's or at Beatriz's house; that Justo's house is located on Grand Stand Street and is an old house, donated by the widow of Santiago over four years ago, and has neither bath nor toilet; that the child is sick; that he has had to go on crutches to see his daughter because they do not send her to him; that the last time he went to see his daughter, the grandmother mistreated him; that they will not allow him to be near his daughter, nor does the latter ask him for his blessing because they forbid her to do so and try to estrange her from him. On cross-

examination he testified, upon being asked who owned the house where the child lives, that there are two houses; that the house where the child lives with her mother belongs to the mother of Beatriz's husband, that is, to Beatriz's mother-in-law, and that the other house in which the child also lives belongs to the minor's grandfather, Justo Berdecía; that this is the second petition for habeas corpus he has filed to obtain the custody of his child; that the first case was not heard because he was in the Army and had been stationed at the island of Santa Cruz; that on certain weeks he does not go to his home in Coamo; that the Veterans Administration sent a monthly allowance of $34 to the child's mother, but that since October this allowance was discontinued; that he was sued previously because he did not contribute to his daughter's support and that this was due to the fact that some time passed after his discharge before he began receiving the checks, but that he told the child to go to his house because there she would have everything she needed until the money came; that upon failing to receive the last payment, they automatically sued him and he was ordered to give $12 monthly to the child; that subsequently the child's mother learned that if she reported him to the Veterans Administration she would receive more money and she reported him, and thereafter the child began to receive $34 monthly; that the Federal Government gave the witness, as a Veteran student, a $96 allowance and that the mother and the child received a monthly allowance of $34, whereas when he was a soldier this allowance amounted to $96; that now the Government does not fix the allowance for a natural child not living with its father, but that instead the latter assigns the amount he wishes to give to the child, and that he assigned the amount of $15 monthly for his child; that those $15 are not enough to defray her daughter's expenses where she is living, but that they would be sufficient if she lived in the witness' home; that the witness pays for the child's expenses;

that in the Catholic school where she is studying the girl pays $3.50; that the child has a charge account in Valldejully y Segarra; that he has never taken a doctor to treat his daughter, but that in some occasions he has bought medicines for her; that the house where the child's mother lives is very old and roofless; that he knows that Beatriz's husband works in Padilla's stone quarry but does not know how much he earns; that he alleged in his petition for habeas corpus that his daughter is under the physical custody of the defendant Justo Berdecía because that man is the child's grandfather and when he went there Justo asked him to leave the child in the house because he loved her very much and the witness agreed to leave her there for two or three months, but that now he cannot go to that house because of the way Mr. Berdecía treats him; that he also alleged in the petition that the child is compelled to live with the respondent surrounded by limitations injurious to her health because the house is not fenced in and everybody goes in there and the house is not safe; that when the child has gone to his house on Sundays he has found her full of lice and with her ears dirty; that he directed the petition for habeas corpus against Beatriz Berdecía and Justo Berdecía because the child is at either house and he wants to look after his daughter; that he does not know what the child's mother earns in a factory making blouses and that since the child's mother and her husband do not pay for the house in which they live, they may be ejected therefrom at any time; that he has an idea what the house where the child's mother lives looks like because he has passed by there often, but that he knows that it is not safe; that his wife can love and take care of the child just as the real mother; that he does not know what the husband of the defendant Beatriz Berdecía earns; that every time he has gone to Justo Berdecía's house the man has been drunk; that he has some savings and is willing to give his daughter everything she might need in the witness' home.

*Filomena Ramírez de Santos* testified that she is married to the plaintiff Roberto Santos González and that they have had no children; that she knows that her husband had a child before he married her; that should the child go to her home, as she wishes, she would love her as much as possible and would devote herself to looking after her because the child would be her companion during her husband's absence; that her husband goes to Coamo every eight days and sometimes on Wednesday; that the house where she lives is comfortable and has a bath and toilet; that she is devoted to the child and would treat her as a daughter; that besides her husband's salary, the witness has a farm and a house from which she receives a $75 monthly rent and that she would use that money to support and maintain the child; that she has been married to Roberto Santos for six years; that the child used to visit her and that she sometimes told her husband that the child ought to live with them.

The evidence for the defendants consisted in the testimony of Angelita González de Pizarro, a member of the Municipal Assembly of Coamo; Ignacio Borges, Julia Berdecía, a sister of the defendant, Beatriz Berdecía de Torres, Carmen Magdalia Santos and Filomena Ramírez de Santos.

The testimony of these witnesses, in general terms, may be summarized as follows: The defendant Beatriz Berdecía lives with her daughter Carmen Magdalia in a house located on Grand Stand Street, in Coamo, together with her parents-in-law who own said house. It is a frame house constructed after the 1928 hurricane and it has a bath and four bedrooms and is fit for occupation. The defendant is a piece-worker in Zoilo María Colón's factory and her salary for that work fluctuates between $15 and $16 per week; defendant's husband works in Padilla's stone quarry, and both the one and the other are honest persons of good repute in the community. The defendant looks after her daughter tenderly and carefully and has her studying in a private

school.   The defendant was compelled on a previous occasion to sue the plaintiff for support for her daughter.   The defendant Beatriz Berdecía defrays all the expenses of the minor, such as paying for her school, medicines, doctor, clothing and meals, with the salary she receives for her work and with some money that her husband gives her for that purpose.   When her daughter was two years old, the defendant, with the money she had saved from her wages and the allowance she received from the federal government because the child's father was rendering services in the army, built a small house in which to live with her daughter, and improved it little by little, but that later, when the girl's father returned from the army, he sold the house and did not give her any part of the proceeds from the sale.   The girl goes every Sunday to visit her father, accompanied by a small nephew of hers, and she has found the house locked many times.   Neither the Three Kings nor Santa Claus has ever brought any present to the girl in her father's home, but they have brought her presents in her mother's home. Before marrying, the defendant lived with her daughter Carmen Magdalia in the house of her father Justo Berdecía. Plaintiff's wife treats the minor Carmen Magdalia well and although the latter likes her father's house, she prefers to live with her mother because she has always lived with her. The minor is in good health.

This was the evidence on which the lower court based its conclusion to the effect that the averments of the complaint were proved and that the minor's welfare is better secured with her father and the latter's wife.[1]

The evidence was conflicting in many points, but although we shall not interfere with the discretion of the lower court

---

[1] The sixth Finding of Fact of the lower court reads:

"6th.   On the contrary, the plaintiff and his wife gave us the impression that they were telling the truth, leading us to conclude that the averments of the complaint were proved and that the minor's welfare is better secured with her father and the latter's wife."

in settling the conflict, we must examine said evidence to determine whether, as the appellants claim, it is not supported by the findings of the lower court.

It is alleged in the petition for habeas corpus that the minor Carmen Magdalia Santos is under the physical custody of her maternal grandfather Justo Berdecía. The lower court made this finding and set it forth in its conclusions as follows: "When the defendant married she confided the girl to her father, the minor's grandfather, in whose house she lives and sleeps." In its conclusions of law the lower court stresses that fact when it argues that the minor's father has been deprived by a third person of his right to the custody of his daughter. Indeed, in deciding this case, the judge of the court *a quo* was greatly influenced by this finding. In his third conclusion of law he says:

"3rd. We admit that, as we have said in other cases and as expressed by our Supreme Court (*Rodríguez v. Pagán*, 67 P.R.R. 321) ordinarily no one looks after a minor with greater care and love than its own mother, but when the state of facts disclosed by the evidence proves that the mother, instead of looking after her child with care and love, delivers it to a third person who (as in the instant case) is unable to provide it with the welfare and happiness to which the child is entitled, the mere fact that she is the mother of the minor whose custody is discussed, must not move the court to award her the companionship of her child when, as here, the minor, living with her father, would be looked after and taken care of not only by him, but also by her father's wife who has stated that she loves the minor and is willing to use her income and properties for the minor's welfare and to educate her properly."

Now, is the evidence strong enough to conclude, as the lower court did, that "when the defendant married she confided the girl to her father, the minor's grandfather, in whose house she lives and sleeps"? The only evidence presented by the plaintiff in this connection was his own testimony. Let us examine it. During the direct examination he testified:

"Q. With whom is your little girl living now?

"A. Sometimes they do not send her to my house and I've had to go lame, with this leg in a cast, to Justo Berdecía's house.

"Q. Who is Justo Berdecía?

"A. The grandfather, and I don't dare go there because she is married and lives further back and I don't like to because, since she was once my wife, they might suppose anything.

"Q. Did Beatriz remarry?

"A. Yes, sir.

"Q. Does Beatriz live with her husband or with Justo?

"A. I don't know because I've gone to Justo's house and sometimes I haven't found the baby.

"Q. Does she live in the two houses?

"A. She lives in the two houses.

"Q. Is she either at Justo's or at Beatriz's house?

"A. Yes, sir." (T. E., p. 8)

During the cross-examination he testified:

"Q. To whom does the house wherein the baby lives belong?

"WITNESS:

"It might be . . . there are two houses and I am going to tell you which are these two houses and to whom they belong. *The house in which the baby lives with her mother* belongs to the husband's mother, to her mother-in-law, *and the other house wherein the baby also lives* belongs to Justo Berdecía. It was a gift because a very old man called Chaplín died and they got that house, the one located in the ward facing the Grand Stand, and that is where they live." (T. E., p. 13.) (Italics ours.)

"Q. Then, witness, do you mean that you've seen the house, but that you dare not say for sure that this woman's house is dilapidated?

"A. Excuse me, Mr. Attorney, Your Honor. Now that you mention her house, she has no house. Her husband's mother does. *She lives in a house belonging to her husband's mother,* and she has other relatives living in that house, and if that house is not his own, he may also be ejected therefrom." (T. E., p. 27.) (Italics ours.)

"Q. Then, witness, don't you know for sure, with certainty, under whose care the girl is, whether under his care or under the woman's care?

"A. *I know that she is in the two houses*.

"Q. Why do you say here, in the third averment of your petition, if you can explain that to me, that the aforesaid minor is at present under the physical custody of the respondent Justo Berdecía?

"A. This man in front. I know that he is her grandfather. Because when I went there this man asked me to leave the child in his house because he loved her very much, I refer to the grandfather, and I told him that we would try for two months, but as I have gone to the house and he has not brought her forward to me as he ought to present her to her father . . . What's more, the way this man talks in his house made me realize that I could not visit said house. Why, even his own daughters have had to ask him to be quiet . . ." (T. E., pp. 28 and 29) (Italics ours.)

"Q. Have you anything against the man and the woman?

"A. Of course, with your permission, *because the child is in one of the two houses* and I want to look after my daughter." (T. E., p. 31) (Italics ours.)

"Q. Don't you know the condition of the house in which she lives?

"A. I have an idea because I've passed by many times, but I know it is not safe. You should go personally to see it, since you may believe me or not; you must go personally to the three houses, *to her father's house; to the woman's house,* and to my house." (T. E., p. 32) (Italics ours.)

Giving full credence to this testimony, we can not agree with the lower court nor subscribe to its finding that the defendant Beatriz Berdecía surrendered the custody of her daughter to Justo Berdecía when she married and that the said minor lives and sleeps in her aforesaid maternal grandfather's house. Such finding is not supported by the evidence. The lower court could conclude, at most, that said minor lived in the two houses, in her mother's house and in her grandfather's house. It appears from the foregoing testimony that the petitioner is not aware of the actual situation in connection with that essential fact.

The court *a quo* also found [2] that the child is not well looked after and taken care of after finding that it was not true that her mother, the defendant, receives a weekly salary of $15 to $16 and after finding that her husband could not possibly help her with adequacy. Regardless of the salary or wage received by the defendant and her husband, it is an uncontroverted fact that both work for pay. What really must concern us is the finding of the lower court to the effect that the minor is not well taken care of and looked after. Accepting that the house where the defendant lives is in a bad condition, plaintiff's evidence (his own testimony) establishes as the only acts of abandonment and neglect in connection with the minor, the fact that the girl has gone to plaintiff's house on Sundays and he has found her full of lice and with her ears dirty. The record does not disclose how often this occurred. We do not think that that fact alone is sufficient to support a finding of such a general nature as the one made by the lower court. It must not be forgotten that the minor is studying in a private school. Usually these schools give a special attention to the personal cleanliness of their students. The plaintiff also testified that the girl was sick, thin and anemic. Defendant's evidence, on the contrary, tended to prove the opposite and although this conflict exists and although the minor was in the presence of the judge of the lower court and testified, there is nothing in the findings of the lower court revealing the minor's state of health. To conclude that said minor is not well taken care of and looked after does not necessarily mean that she is sick.

---

[2] "5th. Likewise, the testimony of Julia, Beatriz's sister, did not deserve credence. She said that Beatriz earns $15 or $16 per week, spending it all on the child; but she vitiated her own testimony by saying that her sister is heavily indebted because she has to take care of the minor. *Which leads us to infer* that neither the matter of the salary nor the allegation that defendant's husband can help her sufficiently with his work, is true and *that, consequently, the girl is not well taken care of and looked after.*" (Italics ours.)

On the other hand the record reveals that the defendant is an honest woman, good natured and of good repute.[3] It also discloses that both she and her husband live modestly with the income from their work, whereas the plaintiff lives under more comfortable financial circumstances, owns a good concrete house with bath and sanitary service, and has such commodities as an ice-box and a maid.

It is incorrect to affirm that "only where the father's behavior is such that it might endanger the children's morals, or when the father, without any justification, abuses them or ignores their necessities, or keeps them in an environment which may lead them to evil or which might jeopardize their health and welfare, may a court, in the exercise of its power of *parens patriae* deprive the father of his care and custody." Perhaps this statement of the lower court is inspired in the doctrine established in *Le Hardy* v. *Acosta*, 18 P.R.R. 438; *Arbona* v. *Torres*, 24 P.R.R. 423 and *Rojas* v. *Colón*, 27 P.R.R. 805. In the latter case the doctrine was set forth thus:

"The *patria potestas* imposed by nature and recognized and regulated by our laws creates rights and duties, one of the former being that the father or the mother, as the case may be, may have the custody of the children. This right is rec-

---

[3] Regardless of the evidence presented by the defendants as to the character and reputation of the minor's mother, the record contains the following incident:

"Q. Witness, when you took the girl's mother to live with you, what kind of a woman was she?

MR. NORIEGA:

What does the kind of a woman she was matter?

My brother attorney is going back to before the girl was born. We do not say in the complaint that she is a bad woman.

MR. PADILLA:

It would be better if you did.

.    .    .    .    .    .    .    .

JUDGE:

Let us put an end to this case. There is no issue as to the defendant's honesty, character and reputation. Therefore, there is no need to set up a defense or engage in a cross-examination of that nature. I think that the question is impertinent." (T. E., pp. 14, 15).

ognized in Subdivision 1 of Section 223 of the Civil Code, which makes it a duty derived from the *patria potestas,* and that duty could not be fulfilled if it could not be claimed as a right; therefore, it being a right, the father or the mother, as the case may be, cannot be deprived of it except in such cases as are determined by law."

and at page 808 it was added: "The father should have the absolute control and custody of his minor children, unless some excellent legal reason to the contrary is alleged and proved."

Nevertheless, this doctrine has been repudiated by this same Court. In *Llopart* v. *Mesorana,* 49 P.R.R. 242, the following paragraph from the dissenting opinion delivered by Mr. Chief Justice Hernández in *Arbona* v. *Torres, supra,* 428, is cited with approval:

" 'It is not possible,' further says Mr. Chief Justice Hernández in his opinion, 'to lay down as an absolute and inflexible principle that a natural child must live with the father who acknowledged it and exercises the right of *patria potestas* over it. The conditions of the exercise of that right should be regulated by the courts in accordance with the special circumstances of each case, always bearing in mind that the *patria potestas* under our present law is not for the benefit of the father or the mother, but for the benefit of the child which requires it.' "

To the same effect see *Blanco* v. *Hernández,* 32 P.R.R. 20; *Babá* v. *Rodríguez,* 36 P.R.R. 453; *Ex parte Maldonado,* 42 P.R.R. 832 and *Chardón* v. *District Court,* 45 P.R.R. 604, cited in *Llopart* v. *Mesorana, supra.*

Now, we have repeatedly held that in proceedings of this kind the welfare of the child is the controlling consideration. *Rodríguez* v. *Pagán,* 67 P.R.R. 321, and cases cited. In view thereof we may ask, does the welfare of the minor Carmen Magdalia Santos demand that her custody be awarded to the plaintiff as ordered by the lower court? In our judgment this question must be answered in the negative. We have not interfered with the discretion of the lower court in set-

tling the conflict in the evidence. However, we have not accepted as true all the facts it found proved, for the evident reason that some of them are not supported by said evidence.

It is true that the minor and her mother live in poverty; but they are not destitute, for both the defendant Beatriz Berdecía and her husband work honestly, and all live on the income they receive for said work. If the minor involved herein suffered financial privations, her father, the plaintiff, would be the one to blame. Why does he not wilfully provide his daughter with a sufficient amount to satisfy her necessities, if he can afford to do so? He lives in a good concrete house having such comforts as a bath, sanitary service, ice-box and, in addition, a maid. He receives a salary as a soldier in the United States Army, and his wife receives income from her separate property, at least at $75 monthly rental from a house,[4] and, furthermore, he has some savings deposited in the post office. That notwithstanding, he gives his daughter an allowance of $15 monthly to satisfy all her necessities knowing, as he himself testified, that such amount is insufficient. We have held that in a contention between parents for the custody of a child, proof that the father was in a better financial condition than the mother, is of little value. *Blanco* v. *Hernández*, 32 P.R.R. 20.

We are also faced with another circumstance which must be taken into account in considering the child's welfare. In awarding her custody to the father, the girl will actually spend most of the time living under the immediate custody of her father's wife, inasmuch as her father spends only two or three days of the week at home; and this, not always. The lower court accepts, citing *Rodríguez* v. *Pagán*, *supra*, that ordinarily no one looks after a minor with greater care and love than its own mother; but it claims that it can not apply that rule to the case at bar because the evidence shows that

---

[4] Pursuant to § 1301 of the Civil Code (1930 ed.) that income belongs to the conjugal partnership.

the mother delivered her daughter to a third party. We have said, and we repeat it now, that such finding is not supported by the evidence. Hence, there is no justified reason to ignore here a rule of such a deep meaning.

In short, neither the defendant's alleged poverty nor the alleged acts of neglect and abandonment in connection with the minor, disclosed by the record, have so much weight and are of such a nature in this case that they justify by themselves that the minor Carmen Magdalia Santos be torn off from her mother's custody with whom she has always lived, and taken to her father's home, where she will be under the immediate custody of a stepmother.

Applying the rule that "the weighing of the evidence is one thing and the legal effect thereof is another," *Rodríguez v. Pagán, supra; Mercedes Bus Line, Inc. v. District Court*, 70 P.R.R. 656 and *Muñoz v. R. Fabián & Co.*, 71 P.R.R. 454, we consider that in view of the special circumstances of this case the welfare of the minor demands that she remain under her mother's custody. We need not, therefore, consider the first error assigned.

The judgment appealed from will be reversed and another entered dismissing the petition for a writ of habeas corpus, with costs.

Mr. Chief Justice Todd, Jr., did not participate herein.